UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 95-5568
(CR-94-453-DKC)

---

United States of America,

Plaintiff - Appellee,

versus

Linwood Douglas Thorne,

Defendant - Appellant.

---

O R D E R

---

The court amends its opinion filed August 10, 1998, as follows:

On the cover sheet, section 7, lines 1-2 -- the law firm for David Lease is corrected to read "STEIN, SPERLING, BENNETT, DE JONG, DRISCOLL, GREENFEIG & METRO, P.C., Rockville, Maryland."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 95-5568

LINWOOD DOUGLAS THORNE,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-94-453-DKC)

Argued: October 30, 1997

Decided: August 10, 1998

Before WIDENER, ERVIN, and WILKINS, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Ervin wrote the
opinion, in which Judge Widener and Judge Wilkins joined.

_____

**COUNSEL**

**ARGUED:** David Warren Lease, STEIN, SPERLING, BENNETT,
DE JONG, DRISCOLL, GREENFEIG & METRO, P.C., Rockville, Mary-
land, for Appellant. Deborah A. Johnston, OFFICE OF THE
UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.
**ON BRIEF:** Lynne A. Battaglia, United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for
Appellee.

_____

**OPINION**

ERVIN, Circuit Judge:

Linwood Douglas Thorne, who pled guilty to conspiracy to distribute cocaine, raises several issues on direct appeal. We find merit in Thorne's first argument -- that the trial court failed to comply with Rule 11 of the Federal Rules of Criminal Procedure by neglecting to inform Thorne of the maximum sentence to which he was subject under the terms of his plea agreement -- and therefore need not address his other claims. We vacate Thorne's guilty plea and sentence and remand his case for further proceedings in accordance with this opinion.

I.

Defendant Thorne initially pled not guilty to a three-count indictment alleging conspiracy to distribute and to possess with intent to distribute a mixture containing cocaine base, possession with intent to distribute a mixture containing cocaine base, and the use of a firearm during and in relation to a drug trafficking offense. On March 27, 1995, after a jury had been empaneled, Thorne entered into a plea agreement with the United States. In the agreement, Thorne agreed to plead guilty to the conspiracy count in exchange for dismissal of the other two counts and the government's recommendation that he be sentenced at the low end of the applicable guidelines. The parties also stipulated to a base offense level of 36, to be increased by two levels for possession of a firearm and decreased by two levels for acceptance of responsibility. They agreed that no other guideline factors applied to Thorne.

The court then conducted a Rule 11 hearing, at which it described the minimum sentence Thorne could receive as 188 months and the maximum as 235 months. The court stated on three occasions that this maximum could be increased to a life sentence if Thorne had a prior criminal record, but noted that pretrial services said Thorne did not have a record, though pretrial services could be wrong.

During the hearing, the court established that Thorne was competent to plead, and then queried Thorne as to the accuracy of the state-

ment of facts attached to the plea agreement. Thorne stated that his alleged co-conspirators had "made a deal" for drugs and that he was just holding the crack for them, but he also agreed that the stipulated facts were correct, and that he knew about the crack and had agreed to supply it to his co-defendants. The court also asked the Assistant U.S. Attorney to explain the essential elements of the offense and what the U.S. Attorney's office was prepared to prove at trial. The court then clarified that the U.S. Attorney would dismiss the last two counts of the indictment, and asked whether Thorne understood that. It also noted that there had been extensive discussion, and asked whether Thorne still wanted to plead guilty. It noted again the substantial nature of the sentence, even at the low end of the guidelines, and asked if Thorne still wanted to plead guilty. Thorne answered all these questions affirmatively. The court had previously ascertained that Thorne understood the constitutional rights he was waiving by pleading guilty.

After the court had accepted Thorne's guilty plea, the Assistant U.S. Attorney brought to the court's attention that Thorne would also be subject to a mandatory five-year term of supervised release. The court did not describe the nature of supervised release beyond noting that it was the guideline equivalent of probation. The court did not ask Thorne whether he still wished to plead guilty after the Assistant U.S. Attorney raised the issue of supervised release.

On May 8, 1995, approximately six weeks after the Rule 11 hearing, Thorne, acting pro se, requested leave of the court to withdraw his guilty plea, alleging ineffective assistance of counsel. The court ordered both Thorne's defense attorney, Ponds, and the U.S. Attorney to respond to Thorne's motion. Ponds defended his actions, and the United States opposed the motion to withdraw the plea. Without opinion, the district court denied Thorne's request to withdraw his plea.

During sentencing, Ponds continued to represent Thorne. Thorne disputed portions of the pre-sentence report that were immaterial to sentencing and asked for a new attorney. The court denied his request, but noted that he would have new counsel on appeal. In fact, the court directed Ponds to file an appeal that day. The court sentenced Thorne to 188 months, which was the lowest permissible sentence under the guidelines, plus five years of supervised release and a fifty dollar spe-

cial assessment. As the court instructed, Ponds then filed this appeal, which we have jurisdiction to entertain under 28 U.S.C. § 1291.

## II.

We review the adequacy of a Rule 11 proceeding de novo. United States v. Good, 25 F.3d 218, 219 (4th Cir. 1994). Rule 11 violations are subject to a harmless error standard. United States v. DeFusco, 949 F.2d 114, 117 (4th Cir. 1991); Fed. R. Crim. P. 11(h).

## III.

Thorne first argues that the district court erred by not informing him that his sentence would include a term of supervised release and by not describing to him the nature of supervised release before accepting his guilty plea. Rule 11(c)(1) requires that the court inform the defendant of "the maximum possible penalty provided by law, including the effect of any special parole or supervised release term . . . ." Fed. R. Crim. P. 11(c)(1).

A district court's failure to inform a defendant that his sentence will incorporate a term of supervised release and its further failure to explain the significance of supervised release is error. Good, 25 F.3d at 220; Moore v. United States, 592 F.2d 753, 756 (4th Cir. 1979). Failure to comply with the dictates of Rule 11 is harmless, however, if the failure does not violate a defendant's substantial rights. United States v. Goins, 51 F.3d 400, 402 (4th Cir. 1995).

In determining whether the district court's errors affected substantial rights, the appellate court will consider (1) what the defendant actually knows, based on an affirmative indication in the record, at the time he pleads guilty; (2) what information would have been added to the defendant's knowledge by compliance with Rule 11; and (3) how the additional or corrected information would likely have affected the defendant's decision. Id. (holding failure to inform defendant of mandatory minimum sentence to be reversible error). "If a review of the record indicates that the oversight `influenced the defendant's decision to plead guilty' and `impaired his ability to evaluate with eyes open the direct attendant risks of accepting criminal respon-

4

sibility,' then substantial rights were violated." Id. at 402-403 (quoting United States v. Padilla, 23 F.3d 1220, 1221 (7th Cir. 1994)).

Thorne may have known that he was subject to five years of supervised release because his plea agreement contained notice of it, but he did not know of the nature of supervised release or of the consequences attendant on its violation. Good, 25 F.3d at 220 (failure to explain effect of supervised release is error even if defendant is aware he must serve a term of supervised release); United States v. Garcia-Garcia, 939 F.2d 230, 232-33 & n.3 (5th Cir. 1991) (characterizing supervised release as restraint on liberty because of potential for reincarceration without credit for time served on supervised release). Though we have declined to go as far as the Seventh Circuit in endorsing a presumption that a Rule 11 failure affects the defendant's decision to plead, see Goins, 51 F.3d at 403 (citing Padilla, 23 F.3d at 1222), in this case Thorne was unable to "evaluate with eyes open the direct attendant risks of accepting criminal responsibility." The district court's failure to inform him of the maximum sentence to which he was subject thus violated his substantial rights. See, e.g., Padilla, 23 F.3d at 1223 (substantial rights violated when defendant receives longer sentence than maximum court advised him he could receive during Rule 11 hearing); United States v. Roberts, 5 F.3d 365, 369 (9th Cir. 1993) (same); United States v. Syal, 963 F.2d 900, 906 (6th Cir. 1992) (same).

Contrary to the government's assertions, the district court's oversight in Thorne's case was not harmless error as outlined in Good: "[f]ailure to discuss the nature of supervised release is harmless error if the combined sentence of incarceration and supervised release actually received by the defendant is less than the maximum term he was told he could receive." 25 F.3d at 220; see also Padilla, 23 F.3d at 1223; United States v. Osment, 13 F.3d 1240, 1243 (8th Cir. 1994) (en banc); Roberts, 5 F.3d at 369; Syal , 963 F.2d at 906. The United States attempts to shoehorn Thorne's case into the Good harmless error rubric by noting that the district court informed Thorne that the maximum penalty he could receive under the guidelines was life in prison if he had a prior criminal record. This argument is unavailing. The district court stated Thorne could receive life only if he had a prior record; logically, Thorne would have known he had no record and was therefore subject to a maximum sentence of 235 months.

5

The maximum term Thorne understood he could receive was therefore less than his actual sentence of 248 months (188 months plus five years (60 months) of supervised release). In the event he violated supervised release, he would be subject to a further five years of incarceration, resulting in an even greater disparity. The district court's failure to inform Thorne of his supervised release term and the nature of supervised release was thus not harmless error under the Good rationale.

We now turn to the question of appropriate remedy. In theory, the Rule 11 error could be rectified either by permitting Thorne to withdraw his guilty plea and plead anew or by remanding to the district court for the imposition of a lesser sentence to ensure Thorne's entire sentence would not exceed the maximum he was told he could receive during the plea colloquy, in this case 235 months. Moore, 592 F.2d at 756. The latter remedy is unavailable to us in this case, however, because Thorne would have to be resentenced below the applicable guideline range in order to bring his sentence under the 235-month maximum,* and the imposition of a minimum five-year term of supervised release is statutorily required under 18 U.S.C. § 3583(e)(3) (1994); 21 U.S.C. §§ 841(b), 846. Cf. Padilla, 23 F.3d at 1224 (vacatur of plea appropriate relief so defendant does not get lesser sentence than that commensurate with offense of conviction); United States v. Bounds, 943 F.2d 541, 546 (5th Cir. 1991) (prejudice may not be cured by eliminating supervised release term because term required

_____

* Thorne's guideline range was from 188-235 months. The court advised Thorne that the maximum sentence he could receive was 235 months, and sentenced him to 188 months in prison. In order to ensure his sentence fell below the maximum of which he was advised, Thorne would have to be resentenced to a maximum of 175 months in prison (175 + 60 = 235). We need not now decide whether his resentencing would have to take into account the "worst-case scenario" -- the additional time he could be incarcerated should he violate supervised release, in order to be below the maximum term of which he was advised, see United States v. Osment, 13 F.3d 1240, 1243 (8th Cir. 1994) (en banc) (maximum penalty is worst case scenario, which assumes term of imprisonment, violation of term of supervised release on last day of release, and subsequent imprisonment for time period of supervised release term), because in either case the period of imprisonment falls below the guideline range.

6

by statute). Therefore, we order that Thorne be permitted to withdraw his guilty plea and to plead anew.

Thorne's other arguments have become moot by virtue of his success on the merits of his first claim.

<u>VACATED AND REMANDED</u>

7